UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILFREDO A. GOLEZ,<br><br>              Plaintiff,<br>v.<br><br>JOHN E. POTTER, Postmaster General,<br><br>              Defendant. | Case No.: 09cv0965 AJB (WMC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE TITLE VII AND REHABILITATION CLAIMS; AND AS TO THE FMLA CLAIM RE ANY EVENTS PRIOR TO MAY 5, 2006**<br><br>[Doc. No. 81.] |

      Plaintiff Wilfredo A. Golez, proceeding *pro se* and *in forma pauperis,* filed a fourth amended complaint against the Defendant John E. Potter, the United States Postmaster General, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16; the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601.  Before the Court is Defendant's motion for partial summary judgment filed on February 10, 2011.  (Dkt. No. 81.) The motion is submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1). After a review of the briefs, supporting documentation, and applicable law, the Court GRANTS Defendant's motion for partial summary judgment as to the Title VII and Rehabilitation Act claims; and as to the FMLA claim regarding any incidents prior to May 5, 2006.

**Procedural Background**

On May 5, 2009, Plaintiff filed a complaint against Defendant Potter. (Dkt. No. 1.) On September 14, 2009, Plaintiff filed a first amended complaint. (Dkt. No. 15.) On December 8, 2009, Defendant filed a motion to dismiss the first amended complaint. (Dkt. No. 22.) Before the motion to dismiss was fully briefed, on February 22, 2010, Plaintiff filed a motion for leave to file a second amended complaint. (Dkt. No. 30.) On February 24, 2010, the Court granted Plaintiff's motion for leave to file a second amended complaint and denied Defendant's motion to dismiss as moot. (Dkt. No. 34.) On February 24, 2010, a second amended complaint was filed. (Dkt. No. 35.) On March 5, 2010, Plaintiff filed a motion for leave of court to file an addendum to the second amended complaint. (Dkt. No. 37.) On March 12, 2010, the Court construed that motion as a motion for leave to file a third amended complaint which was granted. (Dkt. No. 38.) A third amended complaint was filed on March 29, 2010. (Dkt. No. 39.) On April 9, 2010, Defendant filed a motion to dismiss. (Dkt. No. 42.) On April 21, 2010, Plaintiff filed a motion for leave of court to file a fourth amended complaint. (Dkt. No. 44.) On April 23, 2010, the Court denied Plaintiff's request to file a fourth amended complaint and set a briefing schedule on the motion to dismiss. (Dkt. No. 45.) On July 12, 2010, the Court granted Defendant's motion to dismiss and motion to strike and granted in part and denied in part Plaintiff's motion to file a fourth amended complaint. (Dkt. No. 56.) On August 6, 2010, Plaintiff filed a fourth amended complaint. (Dkt. No. 57.) An answer was filed on August 18, 2010. (Dkt. No. 59.) On August 20, 2010, Plaintiff filed a motion for temporary restraining order which was denied on August 23, 2010. (Dkt. No. 62.)

On February 10, 2011, Defendant filed a motion for partial summary judgment, or alternatively, motion to dismiss. (Dkt. No. 81.) On February 22, 2011, Plaintiff filed a motion for leave of court to amend the fourth amended complaint which was denied on February 28, 2011. (Dkt. Nos. 86, 87.) On March 14, 2011, the case was transferred to the undersigned judge. (Dkt. No. 89.) Plaintiff filed an opposition on March 18, 2011 and Defendant filed a reply on March 29, 2011. (Dkt. Nos. 92, 93.)

////

////

////

**Factual Background**

Plaintiff was employed as a custodian with the United States Postal Service from February 16, 1998 to July 4, 2008 when his employment was terminated. (Fourth Amended Complaint ("FAC") ¶ 6.) Plaintiff's disciplinary issues started in November 2004. (Id. ¶ 10.)

On November 17, 2004, Plaintiff was challenged to a fight by a co-worker. (Id. ¶ 12.) He reported the incident to the supervisor and made arrangements to see his medical provider who provided a note that Plaintiff should rest from November 18-20, 2004. (Id.) On November 23, 2004, he returned to work but "felt sick and was not in control of himself" and requested sick leave. (Id. ¶ 13.) Plaintiff was diagnosed with anxiety/distress disorder and prescribed amitriptyline and given a doctor's note not to go back to work from November 23, 2004 to January 6, 2005. (Id. ¶ 14, 15.) On November 10, 2004, the MLS Supervisor informed Plaintiff that there would be consequences for his absence when he was taking care of his sick mother. (Id. ¶ 10.) On December 22, 2004, Plaintiff, in writing, requested a transfer to the Midway plant to avoid further conflict with the co-worker but it was denied. (Id. ¶ 16.)

Defendant suspended Plaintiff for seven days from April 30 to May 6, 2005 for irregular attendance at work. (Id. ¶ 17.) On July 28, 2005, Plaintiff was suspended for fourteen days for irregular attendance. (Id. ¶ 19.) On September 22, 2005, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint. (Id. ¶ 20.) On February 2, 2006, Defendant reduced his suspension to a "paper suspension with no loss of pay" through a pre-arbitration settlement. (Id. ¶ 21.) On June 25, 2005, Plaintiff was transferred to the Midway plant. (Id. ¶ 18.)

In November 2005, after discussing his attendance issues with his supervisor, he was told that "[i]t was business and if Plaintiff could not be there, Plaintiff might as well not be there." (Id. ¶ 9.) On November 18, 2005, Plaintiff's supervisor disapproved Plaintiff's request for a FMLA leave without pay ("LWOP") "due to lack of manpower." (Id. ¶ 11.)

In May 2006, Plaintiff was treated for hypertension at the UCSD Medical Center. (Id. ¶ 22.) On May 12, 2006, he was treated for anxiety at Sharp Rees-Stealy Medical Group and was told to rest for three days. (Id. ¶ 23.) On May 9, 2006, Plaintiff received a notice of proposed removal. (Id. ¶ 24.) Shortly thereafter, Plaintiff submitted a letter of rebuttal to the "EEO and APWU." (Id. ¶ 25.) Around June 15, 2006, Defendant rescinded the proposed letter of removal. (Id. ¶ 26.)

On August 24, 2006, Plaintiff returned from "sick leave/LWOP" and gave his supervisor a doctor's light duty note, stating the Plaintiff could not lift more than 15 pounds, dated August 21, 2006. (Id. ¶ 27.) Plaintiff requested for work within the 15 pound work limitation; however, he was sent home and the request denied. (Id. ¶ 28.) On October 10, 2006, Plaintiff returned to work and received an investigative interview dated October 9, 2007 for not reporting an on-the-job injury. (Id. ¶ 29.) On October 13, 2006, on the orders of the supervisor, Plaintiff was taken by his co-worker to a medical facility because of profuse nose/mouth bleeding. (Id. ¶ 30.) On October 21, 2006, Plaintiff went to Sharp Chula Vista Medical Center Emergency Room for nose/mouth bleeding. (Id. ¶ 31.) On November 13, 2006, Plaintiff went to "Sharp Urgent" to get a note for the previous night's episode as required by the supervisor. (Id. ¶ 32.)

On November 28, 2006, Defendant conducted an investigative interview regarding Plaintiff's continuing unauthorized absences. (Id. ¶ 33.) On November 29, 2006, Plaintiff received a Proposed Removal from employment for his unauthorized absences. (Id. ¶ 34.) On December 4, 2006, Plaintiff submitted a rebuttal to the proposal. (Id. ¶ 35.) On December 28, 2006, Defendant reduced the discipline to a fourteen-day suspension, which was to remain on his record for eighteen months, until June 2008. (Id. ¶ 37.)

In April and May 2008, Plaintiff was late six times. (Id. ¶ 40.) Plaintiff claims he called the supervisor's cell phone to inform him of the delay but the calls were ignored. (Id.) On May 11, 2008, Plaintiff received an emergency call about his mother's health and looked for the supervisor in his office to inform him but he was not there. (Id. ¶ 42, 43.) Plaintiff clocked out to lunch when he left. (Id. ¶ 44.)

On June 2, 2008, Plaintiff received a Notice of Proposed Removal for "Failure to Follow Instructions" to notify his workplace of his absences. (Id. ¶ 49.) On June 11, 2008, Plaintiff delivered his attorney's letter to Defendant. (Id. ¶ 53.) On June 20, 2008, Plaintiff rejected a proposal by Defendant of a "Last Chance Employment Agreement" provided that plaintiff withdraw all claims filed. (Id. ¶¶ 54, 55.) On July 3, 2008, Plaintiff was issued a Notice of Decision of Termination by Defendant. (Id. ¶ 57.) On July 4, 2008, Plaintiff was escorted out of the Facility. (Id. ¶ 58.)

On September 9, 2008, Plaintiff, the EEO Representative and Defendant had an EEO mediation conference but no agreement was reached. (Id. ¶ 61.) Plaintiff alleges that Defendant discriminated against him based on age, race, national origin and disability. (Id. ¶¶ 69, 82.)

In early September 2008, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB")[1] challenging his removal. (FAC ¶ 62; D's Notice of Lodgment ("NOL"), Ex. 2, 18:11-17; 26:6-13; Ex. 5.) On October 29, 2008, Plaintiff filed an EEO complaint with Defendant regarding his termination. (D's NOL, Ex. 2, 22:24- 23:16, 26:15-17; Ex. 6.) On November 12, 2008, the EEO complaint was dismissed because Plaintiff had already filed an MSPB appeal. (FAC 65; D's NOL, Ex. 2, 27:25-28:3, Ex. 7.)

After receiving the November 12, 2008 dismissal of his EEO complaint, he filed a motion to withdraw his appeal with the MSPB on November 18, 2008. (FAC ¶ 65; D's NOL, Ex. 2, 28:20-24; Ex. 8.) On November 21, 2008, the MSPB dismissed the appeal based on his request. (D's NOL, Ex. 9.) On March 18, 2009, Plaintiff filed an appeal with the EEOC challenging Defendant's dismissal of his EEO complaint. (Id., Ex. 10, at MSJ 00061.) On May 5, 2009, Plaintiff filed the instant case in this Court. (Dkt. No. 1.) On September 8, 2009, the EEOC dismissed Plaintiff's appeal. (Pl's NOL at 10[2].)

**I.      Legal Standard pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a dismissal for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins., Co., 511 U.S. 375, 377 (1994).

Under Rule 12(b)(1), a jurisdictional attack may either be "facial" or "factual." White v. Lee, 227 F.3d 1213, 1242 (9th Cir. 2000). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. Thornhill Publishing Co. v. Gen. Tel. Elec., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891

---

[1]The Merit Systems Protection Board is a quasi-judicial government agency created by the Civil Service Reform Act, 5 U.S.C. § 1201 *et. seq.*, "to adjudicate Federal employee appeals of agency personnel decisions." Sloan v. West, 140 F.3d 1255, 1258-59 (9th Cir. 1998). "The MSPB is charged with overseeing and protecting the merit system, and adjudicating conflicts between Federal employees and employers." Id. at 1259.

[2]The page numbers are based on the Court's CM/ECF pagination.

(3d Cir. 1977). In a factual attack, the "defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A challenge for lack of subject matter jurisdiction may be raised at any time by either party or *sua sponte* by the court. Fleming v. Gordon & Wong Law Group, P.C., 723 F. Supp. 2d 1219, 1222 (N.D. Cal. 2010) (citing Olson Farms, Inc. v. Barbosa, 134 F.3d 933, 937 (9th Cir. 1998)). It appears that Defendant is raising a facial challenge.

### A.  Failure to Exhaust Under Title VII and the Rehabilitation Act[3]

Defendant argues that Plaintiff abandoned and failed to exhaust his administrative claim before the MSPB. In opposition, Plaintiff contends that Defendant never sent him a copy of the November 21, 2008 order dismissing the MSPB appeal and the "EEO Letter of Decision." (Opp. at 5.) Therefore, he claims he was deprived of the opportunity to exhaust his administrative remedies. (Id. at 6.) He also claims that he was "overwhelmed by stress, anxiety, pain, and depression and the continuing urgent need of the parent rendered the Plaintiff incapacitated." (Id. at 5.)

Sovereign immunity shields the federal government and its agencies from suit unless it has expressly waived such immunity. United States v. Shaw, 309 U.S. 495, 500-01 (1940); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1993); Balser v. DOJ, Office of U.S. Trustee, 327 F.3d 903, 907 (9th Cir. 2003) ("A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim.") Here, the government has waived its sovereign immunity for suits alleging discriminatory employment practices. See 42 U.S.C. § 2000e-16; 29 U.S.C. § 794.

"In order to bring a Title VII claim in district court, a plaintiff must first exhaust [his or] her administrative remedies." Sommatino v. United States, 255 F.3d 704, 707-708 (9th Cir. 2001) (citations omitted) (affirming district court's dismissal of Title VII claims for lack of jurisdiction); 42 U.S.C. § 2000e-16(c); Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998). Similarly, a federal employee filing a claim of disability discrimination under the Rehabilitation Act must first exhaust administrative remedies available under Title VII. Vinieratos v. U.S. Dept. of Air Force, 939 F.2d 762, 773 (9th Cir. 1991) (citing Boyd v. U.S. Postal Service, 752 F.2d 410, 413-14 (9th Cir. 1985)). "The Supreme Court

---

[3]Administrative exhaustion under Title VII is not a jurisdictional requirement *per se* but is a legal question of whether the plaintiff has satisfied a statutory precondition to suit." Vinieratos, 939 F.2d at 768 n. 5.

has held that failure to file a timely administrative complaint is not a jurisdictional prerequisite to a Title VII claim, but is merely a statutory requirement subject to waiver, estoppel, and equitable tolling." Sommatino, 255 F.3d at 708 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).

An employee must initially file a complaint with the Equal Employment Opportunity Office of one's agency. Sloan, 140 F.3d at 1259. Once a final decision is made, the employee may file an appeal of the agency resolution with the Equal Employment Opportunity Commission or file a civil suit in district court. Id. (citations omitted).

"However, when a federal employee has been affected by both an 'adverse employment action' and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB [("Merit Systems Protection Board"]." Sloan, 140 F.3d at 1259. This type of case is called a "mixed case complaint" which means that the complaint alleges the "employee suffered an adverse employment action that affected, in whole or in part, by unlawful discrimination." Id. at 1259 (citing 29 C.F.R. § 1614.302(a)(1)). A "mixed case appeal" is a case which alleges "an appealable non-discrimination claims coupled with a discrimination claim." Id. (citing 29 C.F.R. § 1614.302(a)(2). "'A mixed case appeal' is not a subset of a 'mixed case complaint.' The MSPB must decide it has jurisdiction over a case before it becomes a 'mixed case appeal.'" Id.

A federal employee seeking to file a 'mixed case complaint" may either initially file a complaint with the EEO and appeal any unfavorable decision to the MSPB or bypass the EEO and file a "mixed case appeal" directly to the MSPB. 29 C.F.R. § 1614.302(b). However, an employee may not file a "mixed complaint" with the EEO and a "mixed case appeal" on the same matter with the MSPB. 29 C.F.R. § 1614.302(b). The regulation requires Plaintiff to raise the same "matter" before either the MSPB or the EEOC, "but not both." Id. The regulation provides that whichever case is filed first "shall be considered an election to proceed in that forum." Id. Once a party proceeds to elect to proceed in one forum, the election is irrevocable and a plaintiff must be obligated to exhaust administrative remedies via that route. Macy v. Dalton, 853 F. Supp. 350, 355 (E.D. Cal. 1994) (stating that plaintiffs "upon selecting the first option (through a union grievance procedure) they became bound to stay on that administrative track until their claims were exhausted" and could not pursue their claims through the EEO process); Jones v. Dept. of Health & Human Servs., 622 F. Supp. 829, 832 (N.D. Ill. 1985)

1  (holding that court lacked subject matter jurisdiction when employee made an irrevocable election of
2  remedies when union representative mistakenly filed a grievance and so discrimination action was
3  barred); see also Harris v. United States, 919 F. Supp. 343, 346 (S.D. Cal. 1996) (district court lacked
4  jurisdiction when plaintiff voluntarily abandoned her administrative remedies because she was impatient
5  and wished to bring suit in federal court); see also Rivera v. United States Postal Service, 830 F.2d
6  1037,1039 (9th Cir.1987), cert. denied, 486 U.S. 1009 (1988) ("[O]nce a party appeals to a statutory
7  agency, board or commission, the appeal must be 'exhausted.' . . .  Impatience with the agency does not
8  justify immediate resort to the courts.")

9  Here, in early September 2008, Plaintiff initially filed an appeal with the Merit Systems
10 Protection Board ("MSPB") challenging his removal.  (FAC ¶ 62; D's NOL, Ex. 2: 18:11-17; 26:6-13;
11 Ex. 5.)  While the appeal with the MSPB was pending, on October 29, 2008, Plaintiff filed an EEO
12 complaint with Defendant regarding his termination.  (D's NOL, Ex. 2, 22:24- 23:16, 26:15-17; Ex. 6.)
13 On November 12, 2008, the EEO complaint was dismissed because Plaintiff had already filed an MSPB
14 appeal.  (D's NOL, Ex. 2, 27:25-28:3; Ex. 7.)  After receiving the November 12, 2008 dismissal of his
15 EEO complaint, on November 18, 2008, Plaintiff filed a motion to withdraw his appeal with the MSPB
16 because he wanted to go through the EEO process.  (D's NOL, Ex. 2, 28:20-24; Ex. 8.)  On November
17 21, 2008, the MSPB dismissed the appeal based on his request.  (D's NOL, Ex. 9.)  On March 17, 2009,
18 Plaintiff filed an appeal with the EEOC challenging Defendant's dismissal of his EEO complaint.  (D's
19 NOL, Ex. 10, p. MSJ 00061.)  On May 5, 2009, Plaintiff filed the instant case in this Court.  (Dkt. No.
20 1.)  On September 3, 2009, the EEOC dismissed Plaintiff's appeal of the EEO decision of November 12,
21 2008 for failure to demonstrate that an extension of the applicable time limits was warranted.  (Pl's NOL
22 at 10.)

23 In early September 2008, Plaintiff initially proceeded before the MSPB and made an irrevocable
24 election to proceed in that forum.  See 29 C.F.R. § 1614.302(b).  Realizing that he wanted to pursue his
25 claims through the EEO process, Plaintiff filed a motion to withdraw his appeal with the MSPB.  The
26 motion to withdraw caused Plaintiff to abandon the administrative process and prevented him from
27 exhausting his administrative remedies.  See Macy, 853 F. Supp. at 355.
28

In opposition, Plaintiff appears to argue that he is entitled to equitable tolling because he never received a copy of the November 21, 2008 order dismissing the MSPB appeal so he was not given the opportunity to exhaust his administrative remedies by appealing the MSPB decision. (Opp. at 6.) He also contends that he did not receive the "EEO Letter of Decision." (Id. at 6.)

As to the MSPB's order of dismissal, Plaintiff claims that he did not see the MSPB decision until February 11, 2009 when he received it from defense counsel. Therefore, he claims he could not exhaust his administrative remedies by appealing the MSPB decision. However, when he was allegedly informed about the MSPB decision in February 2009 that granted his motion to withdraw his appeal, Plaintiff could have filed a petition for review before the Board or with the Court of Appeals for the Federal Circuit.[4] (P's NOL at 6.) Instead of attempting to exhaust his administrative remedies at that time, he filed an appeal with the EEOC on March 17, 2009. Therefore, equitable tolling would not apply because there is no deadline to toll since he did not file an appeal of the MSPB dismissal order to the Board or to the Federal Circuit. The Court concludes that when Plaintiff abandoned the appeal to the MSPB, he failed to exhaust his administrative remedies. See Sommatino, 255 F.3d at 708 ("abandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review.")

As to the receipt of the EEO Letter of Decision of September 3, 2009 dismissing the EEO appeal, the fact that he did not receive that opinion is of no value because he had already filed the instant case with this Court on May 5, 2009. Defendant does not allege that Plaintiff failed to timely appeal that decision. As to the dismissal of the EEO complaint dated November 12, 2009, it appears Plaintiff timely received this decision because shortly thereafter on November 18, 2008, Plaintiff filed a request to withdraw his appeal to the MSPB "due to a new development." (D's NOL, Ex. 8.) Therefore, the Court concludes that Plaintiff's alleged failure to receive administrative decisions in his case does not entitle him to equitable tolling.

---

[4]Although the appeal of the MSPB dismissal order would not have been timely, he could have argued equitable tolling for not having received the decision of the MSPB dismissing his appeal.

Moreover, it appears that Plaintiff contends that he is entitled to equitable tolling because he was "overwhelmed by stress, anxiety, pain, and depression and the continuing urgent need of the parent rendered the Plaintiff incapacitated." (Opp. at 5.)

"The exhaustion requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling." Leong v. Potter, 347 F.3d 1117, 1122-23 (9th Cir. 2003) (affirming dismissal for lack of subject matter jurisdiction where plaintiff failed to exhaust claim and plaintiff was not entitled to equitable relief to allow such claim). Equitable tolling looks to plaintiff's excusable ignorance and lack of prejudice to the defendant. Id. at 1123; Sommatino, 255 F.3d 704 (affirming dismissal for lack of jurisdiction where plaintiff failed to present claims to the appropriate administrative authority and no ground for equitable relief applied). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Id. Mental incompetence may equitably toll administrative deadlines. Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999).

Here, although Plaintiff alleges that he was suffering from depression and was under physical, mental and emotional stress and anxiety, he has not provided any evidence to support his physical and mental condition. He provides two unauthenticated documents by a doctor concerning his health condition; however, even if they were admissible, the dates on these documents are dated 2005 and 2007, which are outside the dates when Plaintiff was removed from his position and pursued his administrative remedies. (Pl's NOL at 3-4.) Plaintiff argues that he was prescribed anti-depressants by his psychologist; however, no documentation has been provided.

In addition, the procedural history of this case shows that Plaintiff was competent enough to be aware of his legal rights and pursue his administrative remedies. For example, on July 17, 2008, Plaintiff successfully filed and pursued a workers' compensation claim. (FAC ¶¶ 59, 63.) On September 3, 2008, he filed an appeal with the MSPB. (D's NOL, Ex. 5.) On October 29, 2008, he filed a formal EEO administrative complaint. (Id., Ex. 6.) On November 18, 2008, he made a strategic decision to withdraw the MSPB appeal in order to pursue his EEO complaint. (Id., Ex. 8.) On March

1  18, 2009, he appealed the November 12, 2008 EEO decision to the EEOC.  (Id., Ex. 10.)  On May 5,
2  2009, he filed the complaint in this case.  (Dkt. No. 1.)
3      Based on the documents presented, Plaintiff has failed to show that he was incapable of
4  comprehending his legal rights during the periods at issue here.  Accordingly he is not entitled to
5  equitable tolling to extend the time he could file his MSPB appeal.
6      **B.    Waiver of Claims**
7      Even if Plaintiff had administratively exhausted his remedies before the MSPB, Defendant
8  argues that he waived his discrimination and retaliation claims under Title VII and the Rehabilitation
9  Act by not including them in that appeal.  Plaintiff opposes and claims that he "did not have a clear
10 understanding of the issues due to incapacity."  (Opp. at 6.)  He contends that he was incapacitated due
11 to stress, anxiety, pain, depression and being the caregiver of an elderly parent.  (Id. at 5.)
12      Only claims raised at the administrative level may be brought in federal court.  Leong, 347 F.3d
13 at 1122.  A court lacks jurisdiction over claims not listed in a plaintiff's administrative claims unless the
14 allegations are "like or reasonably related to the allegations of the EEOC charge."  Id.; Stache v. Int'l
15 Union of Bricklayers and Allied Craftsmen, 852 F.2d 1231, 1234 (9th Cir. 1988); Green v. Los Angeles
16 County Superintendent of Schs., 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation omitted)
17 ("Incidents of discrimination not included in an EEOC charge may not be considered by a federal court
18 unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.").
19 To determine whether new claims are "like or reasonably related to" previous allegations is whether the
20 original investigation would have encompassed the later charges. Green, 883 F.2d at 1476.  In one case,
21 the Ninth Circuit held that the allegation of sex and national origin discrimination before the EEOC and
22 the additional claims of "race, color and religious discrimination" were not related even though the
23 plaintiff "relie[d] on the same employer actions to demonstrate discrimination . . . ."  Shah v. Mt. Zion
24 Hospital & Medical Center, 642 F.2d 268, 271-72 (9th Cir. 1981).  The charge must at least be sufficient
25 to notify the agency that employment discrimination is claimed."  Sommatino, 255 F.3d at 708.
26     In Hays, after receiving a notice of proposed removal from his job, the plaintiff appealed the
27 removal decision to the MSPB but did not allege any discrimination.  Hays v. Postmaster General of
28 United States, 642 F.2d 328, 329 (9th Cir. 1989).  Shortly thereafter, he filed a formal EEO complaint

1 charging discrimination. Id. However, since he filed a mixed case complaint, he could only proceed in
2 the forum where he first filed a complaint. Id. Later, the Postal Service dismissed the EEO complaint
3 because he had already appealed to the MSPB. Id. at 329. The Postal Service advised him to bring the
4 discrimination allegation to the attention of the MSPB within 20 days but he did not do so. Id. at 329-
5 30. The court concluded that it lacked jurisdiction over discrimination claims that were not raised
6 before the MSPB. Id. at 330.

7  Here, Plaintiff filed an appeal to the MSPB on September 2, 2008 alleging "I was fired without
8 just cause." (D's NOL, Ex. 5.) Plaintiff did not allege any discriminatory claims under Title VII or the
9 Rehabilitation Act before the MSPB as he did in the fourth amended complaint. Therefore, the claims
10 he brought before the MSPB is not like or reasonably related to the claims in this case. See Hays, 642
11 F.2d at 329; Sommatino, 255 F.3d at 708.

12 Plaintiff also argues that he is entitled to equitable relief because he was incapacitated and did
13 not have a clear understanding of the issues. (Opp. at 6.) As discussed above, Plaintiff has failed to
14 provide any support that he was incapacitated such that he was not capable of understanding his legal
15 rights. Therefore, the Court lacks subject matter jurisdiction to consider the Title VII and Rehabilitation
16 Act claims because they were not raised before the MSPB.

17 **C.    Timeliness**

18 Defendant also argues that even if Plaintiff's EEO process were valid, Plaintiff did not timely
19 file a complaint in this Court. Plaintiff argues that he did not receive the EEOC decision of September
20 3, 2009 because he was suffering from depression; physical, mental and emotional distress; anxiety; and
21 taking anti-depressant medication. (Opp. at 7.)

22 On November 12, 2008, Defendant dismissed the EEO complaint. According to the dismissal,
23 Plaintiff could file an EEOC appeal challenging the dismissal within 30 calendar days of the date of his
24 receipt of the final action, see 29 C.F.R. § 1614.402(a), or file a civil action in the district court within
25 90 days of his receipt of the final action, see 29 C.F.R. § 1614.407(a). (D's NOL, Ex. 7, p. MSJ 00047.)
26

27 On November 12, 2008, Defendant dismissed Plaintiff's EEO complaint. Plaintiff proceeded to
28 pursue both an EEOC appeal and file a civil action in the district court. On March 18, 2009, Plaintiff

filed an appeal to the EEOC, and on May 5, 2009, he filed a civil complaint in this Court.  Both filings were beyond the statutorily required time to file an appeal and a complaint.  Plaintiff's argument that he did not receive the September 3, 2009 decision from the EEOC has no relevance to the issues in this case.  The issue is whether he timely filed an appeal with the EEOC or a complaint with the district court.  Moreover, he had already filed his civil case in this Court on May 5, 2009, months before he received the EEOC decision.  Furthermore, as discussed above, Plaintiff has not shown he was entitled to equitable tolling during the relevant time period.  Accordingly, the Title VII and Rehabilitation claims must be dismissed for failure to timely file the complaint in this Court.

Based on the above, the Court lacks subject matter jurisdiction over the case and GRANTS Defendant's motion for partial summary judgment as to the Title VII and Rehabilitation claims.

**II.     Legal Standard pursuant to Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  If the non-moving party fails to make

a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

### A.     Family Medical Leave Act[5]

In liberally construing the statute of limitations deadline, Defendant moves for partial summary judgment on the FMLA claims as to any events occurring before May 5, 2006[6] because they are barred by the three year statute of limitations. The events include the December 24, 2004 denial of a transfer request, (FAC ¶¶ 16, 85); the April 30, 2005 seven-day suspension, (id. ¶¶ 17, 84, 87); the November 2005 comment by a supervisor that "[i]t was business and if Plaintiff could not be there, Plaintiff might as well not be there," (id. ¶¶ 9, 69, 70); and the November 18, 2005 denial of a request for FMLA leave without pay, (Id. ¶¶ 11, 69, 77). It also includes a July 28, 2005 fourteen-day suspension for irregular attendance which was later reduced to a "paper suspension with no loss of pay." (Id. ¶¶ 19, 21.) In opposition, Plaintiff merely argues that the three year limitations period should be used instead of the two year period because the FMLA violations were willful.

The FMLA grants up to twelve weeks of leave per year to eligible employees in various circumstances, including in order to care for a parent with a serious health condition. 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.113; 29 C.F.R. § 825.201(a). It is unlawful to interfere with or deny the exercise of an employee's FMLA rights, or discharge or in any other manner discriminate against an employee for opposing any practice made unlawful under the FMLA. 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(a).

---

[5]The Court notes that Defendant filed a motion for partial summary judgment as to the remaining FMLA claims on July 25, 2011. That motion is not yet fully briefed.

[6]Defendant incorrectly asserts that the complaint was filed on May 9, 2009. However, the complaint was filed on May 5, 2009. (Dkt. No. 1.)

1    Title I of the FMLA authorizes some federal employees, including USPS employees, to file district court actions for violations of the FMLA. 29 U.S.C. § 2617(a)(2). The statute provides "an action may be brought under this section not later then 2 years after the date of the last event constituting the alleged violation for which the action is brought . . . . In the case of such action brought for a willful violation . . . .such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought. 29 U.S.C. § 2617(c)(1) & (2).

To determine the date when the statute of limitation begins in an adverse employment action, the statue of limitations must be measured from the time the plaintiff is notified of the alleged unlawful employment practice. Delaware State Coll. v Ricks, 449 U.S. 250, 259 (1980). District courts have held that the FMLA limitations period begins "to run for each denial of FMLA leave . . . ." Maher v. Int'l Paper Co., 600 F. Supp. 2d 940, 950 (W.D. Mich. 2009); Beekman v. Nestle Purina Petcare Co., 635 F. Supp. 2d 893, 907 (N.D. Iowa 2009).

For purposes of the instant motion for partial summary judgment, Defendant presumes the three-year limitations period applies. Plaintiff filed the complaint on May 5, 2009. (Dkt. No. 1.) Therefore, Defendant argues that any events occurring before May 5, 2006 are barred under the three year statute of limitations. Plaintiff does not object to the three year statute of limitations. Accordingly, under the summary judgment standard, Plaintiff has failed to present specific facts that there is a genuine factual issue for trial. See Celotex, 477 U.S. at 324. Accordingly, the Court GRANTS Defendant's motion for partial summary judgment on the FMLA claim as it relates to any incident prior to May 5, 2006.

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion for partial summary judgment as to the Title VII and Rehabilitation Act claims; and GRANTS Defendant's motion for partial summary judgment as to the FMLA claims regarding any incident that occurred prior to May 5, 2006.

IT IS SO ORDERED.

DATED: October 14, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28