UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILFREDO A. GOLEZ, | ) | Case No.: 09cv965 AJB (WMC) |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| v. | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT AS TO THE REMAINING** |
| JOHN E. POTTER, Postmaster General, | ) | **FMLA CLAIM** |
| | ) | |
| Defendant. | ) | [Doc. No. 106.] |
| | ) | |
| | ) | |
| | ) | |

Plaintiff Wilfredo A. Golez, proceeding *pro se* and *in forma pauperis,* filed a fourth amended complaint against Defendant John E. Potter, the United States Postmaster General, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16; the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601.  On October 17, 2011, the Court granted Defendant's motion for partial summary judgment as to the Title VII and rehabilitation claims and as to the FMLA claim regarding any events prior to May 5, 2006. (Dkt. No. 113.) Before the Court is Defendant's second motion for partial summary judgment filed on July 25, 2011 regarding the remaining FMLA claim.  (Dkt. No. 106.)  The motion is submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1).  After a review of the briefs, supporting

documentation, and applicable law, the Court **GRANTS in part and DENIES in part** Defendant's second motion for partial summary as to the FMLA claim regarding any incidents after May 5, 2006.

<h2 style="text-align:center">Procedural Background</h2>

On May 5, 2009, Plaintiff filed a complaint against Defendant Potter.  (Dkt. No. 1.)  On September 14, 2009, Plaintiff filed a first amended complaint.  (Dkt. No. 15.)  On December 8, 2009, Defendant filed a motion to dismiss the first amended complaint.  (Dkt. No. 22.)  Before the motion to dismiss was fully briefed, on February 22, 2010, Plaintiff filed a motion for leave to file a second amended complaint.  (Dkt. No. 30.)  On February 24, 2010, the Court granted Plaintiff's motion for leave to file a second amended complaint and denied Defendant's motion to dismiss as moot.  (Dkt. No. 34.)  On February 24, 2010, a second amended complaint was filed.  (Dkt. No. 35.)  On March 5, 2010, Plaintiff filed a motion for leave of court to file an addendum to the second amended complaint.  (Dkt. No. 37.)  On March 12, 2010, the Court construed that motion as a motion for leave to file a third amended complaint which was granted.  (Dkt. No. 38.)  A third amended complaint was filed on March 29, 2010.  (Dkt. No. 39.)  On April 9, 2010, Defendant filed a motion to dismiss.  (Dkt. No. 42.)  On April 21, 2010, Plaintiff filed a motion for leave of court to file a fourth amended complaint.  (Dkt. No. 44.)  On April 23, 2010, the Court denied Plaintiff's request for leave to file a fourth amended complaint and set a  briefing schedule on the motion to dismiss.  (Dkt. No. 45.)  On July 12, 2010, the Court granted Defendant's motion to dismiss and motion to strike and granted in part and denied in part Plaintiff's motion for leave to file a fourth amended complaint.  (Dkt. No. 56.)  On August 6, 2010, Plaintiff filed a fourth amended complaint.  (Dkt. No. 57.)  An answer was filed on August 18, 2010.  (Dkt. No. 59.)  On August 20, 2010, Plaintiff filed a motion for temporary restraining order which was denied on August 23, 2010.  (Dkt. No. 62.)

On February 10, 2011, Defendant filed a motion for partial summary judgment, or alternatively, motion to dismiss.  (Dkt. No. 81.)  On February 22, 2011, Plaintiff filed a motion for leave of court to amend the fourth amended complaint which was denied on February 28, 2011.  (Dkt. Nos. 86, 87.)  On March 14, 2011, the case was transferred to the undersigned judge.  (Dkt. No. 89.)  Plaintiff filed an opposition on March 18, 2011 and Defendant filed a reply on March 29, 2011.  (Dkt. Nos. 92, 93.)  On October 17, 2011, the Court granted Defendant's motion for partial summary judgment as to the Title

VII and rehabilitation claims and as to the FMLA claims regarding any events prior to May 5, 2006. (Dkt. No. 113.)

On July 25, 2011, Defendant filed a second motion for partial summary judgment as to the remaining FMLA claims regarding any events after May 5, 2006.  On December 20, 2011, Plaintiff filed an opposition to the motion for partial summary judgment. (Dkt. No. 131.)  Defendant filed a reply on January 9, 2012. (Dkt. No. 132.)

**Factual Background**

Plaintiff was employed as a custodian with the United States Postal Service from February 16, 1998 to July 4, 2008 when his employment was terminated.  (Fourth Amended Complaint ("FAC") ¶ 6.) Plaintiff's disciplinary issues started in November 2004.  (Id. ¶ 10.)

According to the fourth amended complaint, Defendant suspended Plaintiff for seven days from April 30 to May 6, 2005 for irregular attendance at work.  (Id. ¶ 17.)  On July 28, 2005, Plaintiff was suspended for fourteen days for irregular attendance.  (Id. ¶ 19.)  On February 2, 2006, Defendant reduced his suspension to a "paper suspension with no loss of pay" through a pre-arbitration settlement. (Id. ¶ 21.)

In November 2005, after discussing his attendance issues with his supervisor, he was told that "[i]t was business and if Plaintiff could not be there, Plaintiff might as well not be there."  (Id. ¶ 9.) On May 9, 2006, Plaintiff received a notice of proposed removal.  (Id. ¶ 24.)  Shortly thereafter, Plaintiff submitted a letter of rebuttal to the "EEO and APWU."  (Id. ¶ 25.)  Around June 15, 2006, Defendant rescinded the proposed letter of removal.  (Id. ¶ 26.)

On October 10, 2006, Plaintiff returned to work and received an investigative interview dated October 9, 2006 for not reporting an on-the-job injury.  (Id. ¶ 29.)  On November 28, 2006, Defendant conducted an investigative interview regarding Plaintiff's continuing unauthorized absences.  (Id. ¶ 33.) On November 29, 2006, Plaintiff received a Proposed Removal from employment for his unauthorized absences.  (Id. ¶ 34.)  On December 4, 2006, Plaintiff submitted a rebuttal to the proposal.  (Id. ¶ 35.) On December 28, 2006, Defendant reduced the discipline to a fourteen-day suspension, which was to remain on his record for eighteen months, until June 2008.  (Id. ¶ 37.)

In April and May 2008, Plaintiff was late six times. (<u>Id.</u> ¶ 40.)  Plaintiff claims he called the supervisor's cell phone to inform him of the delay but the calls were ignored.  (<u>Id.</u>)  On May 11, 2008, Plaintiff received an emergency call about his mother's health and looked for the supervisor in his office to inform him but he was not there.  (<u>Id.</u> ¶ 42, 43.)  Plaintiff clocked out to lunch when he left.  (<u>Id.</u> ¶ 44.)

On June 2, 2008, Plaintiff received a Notice of Proposed Removal for "Failure to Follow Instructions" to notify his workplace of his absences.  (D's Notice of Lodgment ("NOL"), Ex. 3.)  On June 11, 2008, Plaintiff delivered his attorney's letter to Defendant.  (P's NOL, Ex. 5 at pgs. 41-42[1].)  On June 20, 2008, Plaintiff rejected a proposal by Defendant of a "Last Chance Employment Agreement" provided that Plaintiff withdraw all claims filed.  (FAC ¶¶ 54, 55.)  On July 3, 2008, Plaintiff was issued a Notice of Decision of Termination by Defendant.  (D's NOL, Ex. 4.)  On July 4, 2008, Plaintiff was escorted out of the Facility.  (FAC ¶ 58.)

## I.    Legal Standard pursuant to Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  <u>Celotex Corp.</u>, 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  <u>Id.</u> at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

---

[1]The pages in Plaintiff's NOL cited by the Court are based on the CM/ECF pagination.

09cv0965-AJB(WMC)

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  Anderson, 477 U.S. at 255.

"A document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, a *pro se* litigant must comply with procedural rules.  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  In addition, a nomoving party's failure to comply with the rules does not excuse the moving party's duty to demonstrate its entitlement to judgment as a matter of law.  Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003).  A moving party under Rule 56 must affirmatively show that there are no genuine issues as to any material fact and they were entitled to judgment as a matter of law.  Id. at 1183.

The Ninth Circuit has observed that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment).  The nonmoving party need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." F.D.I.C. v. N.H. Ins. Co., 953 F.2d 478, 485 (9th Cir. 1991) (because Defendant failed to object to the admission of documents, the court considered the documents in a Rule 56 motion despite the fact that the evidence was presented in a form that would not be admissible at trial) (quotation omitted).

**A.     Statute of Limitations**

In the previous motion for summary judgment which was filed prior to the conclusion of discovery, Defendant liberally construed the statute of limitations and argued that any events occurring before May 5, 2006[2] must be time-barred by the three-year statute of limitations which requires a showing of a willful violation.  In the instant motion, Defendant argues that after having conducted discovery, Plaintiff lacks any evidence that the challenged decisions were willful violations under the FMLA.  Therefore, the two year statute of limitations applies and any events alleging FMLA violations prior to May 5, 2007 must be barred.  The incidents include the following:

1)      October 9, 2006 investigative interview (FAC ¶¶ 11, 69, 77);

2)      November 28, 2006 investigative interview (id., ¶¶ 33, 69, 75).

In opposition, Plaintiff argues that there was a willful violation of the FMLA and the continuing violations doctrine should apply.  Specifically, he contends his supervisor's comment in 2005 that "[i]t was business and if Plaintiff could not be there, Plaintiff might as well [n]ot be there" (FAC ¶¶ 9, 69, 70) reveals his employer's motive and reason for Plaintiff's subsequent FMLA discrimination, false accusation, harassment and eventual termination.  (Opp. at 1-2.)

Title I of the FMLA authorizes some federal employees, including USPS employees, to file district court actions for violations of the FMLA. 29 U.S.C. § 2617(a)(2). The statute provides "an action may be brought under this section not later then 2 years after the date of the last event constituting the alleged violation for which the action is brought . . . . In the case of such action brought for a willful violation . . . such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.  29 U.S.C. § 2617(c)(1) & (2).

The FMLA and the United States Supreme Court has not expressly defined "willful" under the FMLA.  See 29 U.S.C. § 2617; Samuels v. Kan. City Mo. Sch. Dist., 437 F.3d 797, 803 (8th Cir. 2006). Other circuits have looked to the United States Supreme Court's definition of "willful" in the context of the Fair Labor Standards Act [("FLSA")] as defined in McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Samuels, 437 F.3d at 803; Porter v. N.Y.U. School of Law, 392 F.3d 530, 531 (2d Cir.

---

[2]Defendant incorrectly asserts that the complaint was filed on May 9, 2009.  However, the complaint was filed on May 5, 2009.  (Dkt. No. 1.)

6

1    2004); Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33-34 (1st Cir. 2003); see also Ricco v.

2    Potter, 377 F.3d 599, 602-03 (6th Cir. 2004); Clemens v. Avis Rent a Car System, LLC, No.11CV43,

3    2001 WL5239212, at *2 (E.D. Wash. Nov. 1, 2011); Batson v. T-Mobile USA, Inc., No. 08-6204-AA,

4    2010 WL 1924676, at *2 (D. Or. May 11, 2010).

5           The United States Supreme Court held that an employer acts "willfully" when he or she "either

6    knew or showed reckless disregard for the matter of which its conduct was prohibited by the statute."

7    McLaughlin, 486 U.S. at 133.  If "an employer acts reasonably in determining its legal obligation, its

8    action cannot be deemed willful . . . . If any employer acts unreasonably, but not recklessly, in

9    determining its legal obligation, then . . . it should not be . . . considered [willful.]"  Id. at 135 n. 13.

10          In his opposition, Plaintiff merely argues that Defendant acted willfully; however, he has not

11   submitted any evidence to support such an allegation.  Plaintiff has failed to provide any facts or

12   designate any specific facts showing there is a genuine issue of material fact that Defendant "either

13   knew or showed reckless disregard for the matter" at issue.  See McLaughlin, 486 U.S. at 133.

14   Therefore, the Court concludes that Plaintiff has not demonstrated a willful violation by Defendant and

15   the two- year statute of limitations applies and any claims prior to May 5, 2007 must be time-barred.

16          In addition, it appears that Plaintiff is arguing that the continuing violations doctrine applies and

17   his supervisor's comment in 2005 that  "[i]t was business and if Plaintiff could not be there, Plaintiff

18   might as well [n]ot be there," (FAC ¶¶ 9, 69, 70) reveals his employer's motive to discriminate and

19   harass him to eventual termination.

20          The continuing violations doctrine allows a court to consider events that would otherwise be

21   time-barred if the untimely events are part of an ongoing unlawful employment practice.  Draper v.

22   Coeur Rochester, Inc., 147 F.3d 1104, 1107 (9th Cir. 1998); see also Shepard v. City of Portland,  – F.

23   Supp. 2d –, 2011 WL 5282607 (D. Or. 2011) (applying continuing violation doctrine to claim under the

24   FMLA).  To establish a continuing violation, a plaintiff must show that the untimely incidents were part

25   of a continuing pattern of discrimination, which continued into the relevant limitations period.  Sosa v.

26   Hiraoka, 920 F.2d 1451, 1455 (9th Cir. 1990).

27           As a preliminary matter, Plaintiff has failed to provide any evidence about the facts surrounding

28   the statement.  Plaintiff has not provided an affidavit or declaration indicating that this statement was

7

09cv0965-AJB(WMC)

made, who made the statement and the facts surrounding the statement.  He merely presents arguments

in his opposition.  Second, one comment made in 2005 is too remote in time and does not establish "a

continuing pattern of discrimination, which continued into the relevant limitations period."  See Sosa,

920 F.2d at 1455.  Accordingly, the continuing violations doctrine does not apply in this case.

In sum, the Court concludes that Plaintiff has not shown that the alleged acts by Defendant were

willful and that the continuing violations doctrine applies.  Therefore, under the two-year statute of

limitations, any alleged events prior to May 5, 2007 are time-barred.

**B.     Family Medical Leave Act**

The events relevant to the instant motion for summary judgment under the FMLA include the

following:

1)     Decision to make Plaintiff AWOL, rather than give him FMLA leave for May 11, 2008.

(FAC ¶ 77.); and

2)     July 3, 2008 removal from employment.  (Id. ¶¶ 57, 69, 71-72, 82, 99.)

"The FMLA provides job security and leave entitlements for employees who need to take

absences from work . . . to care for family members with serious illnesses."  Xin Liu v. Amway Corp.,

347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2612.)  The FMLA grants up to twelve weeks of

leave per year to eligible employees in various circumstances, including in order to care for a parent

with a serious health condition.  29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.113; 29 C.F.R. §

825.201(a).  The FMLA created two interrelated substantive employee rights: "first, the employee has a

right to use a certain amount of leave for protected reasons, and second, the employee has a right to

return to his or her job or an equivalent job after using protected leave. 29 U.S.C.  §§ 2612(a), 2614(a)."

Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001).

Courts have recognized two theories of recovery on FMLA claims under 29 U.S.C. § 2615.

Bachelder, 259 F.3d at 1124; Xin Liu, 347 F.3d at 1136.  First, it is unlawful for an employer "to

interfere with, restrain or deny the exercise of . . . any right" provided under the FMLA.  29 U.S.C. §

2615(a)(1) (known as an "interference claim").  Second, it is "unlawful for any employer to discharge or

in any manner discriminate against any individual for opposing any practice made unlawful by" the

FMLA.  29 U.S.C. § 2615(a)(2) (known as a "retaliation claim").  29 U.S.C. § 2615(a)(2) does not cover

negative consequences on an employee because he has utilized FMLA leave.  <u>Bachelder</u>, 259 F.3d at 1124.

In this case, Plaintiff alleges that Defendant "retaliated against him for engaging in protected activities, namely taking Family Medical Leave Act leave."  (FAC ¶ 69.)  While Plaintiff phrases his claim as one of retaliation, essentially he is asserting he suffered an adverse employment action for taking FMLA leave also known as an "interference claim" under 29 U.S.C. § 2615(a)(1).

In order to prevail on a claim, a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." <u>Bachelder</u>, 259 F.3d at 1125.[3]  A plaintiff may prove this claim through either direct or circumstantial evidence, or both.  <u>Id.</u>

Congress authorized the Department of Labor to issue implementing regulations for the FMLA.[4] Under the regulations, "interference" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."  29 C.F.R. § 825.220(b).  In addition "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring promotions or disciplinary actions . . . ."  29 C.F.R. § 825.220(c)

### 1.    Decision to Make Plaintiff AWOL, Rather Than Give Him FMLA Leave for May 11, 2008

Defendant argues that Plaintiff failed to comply with Defendant's usual notice and procedural requirements for notifying his employer of an unexpected absence.  Specifically, Defendant claims that on May 11, 2008, Plaintiff left the premises during his duty period without getting management's

---

[3]The Ninth Circuit has declined to apply the burden shifting framework recognized in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1972) to FMLA "interference" claims.  <u>Bachelder</u>, 259 F.3d at 1125; <u>Xin Liu</u>, 347 F.3d at 1136 ("While other circuits have applied the <u>McDonnell Douglas</u> framework to FMLA termination [interference] cases, this Circuit . . .explicitly declined to apply this framework [to interference claims].").

[4]Congress authorized DOL to issue implementing regulations for the FMLA.  <u>See</u> 29 U.S.C. § 2654. "These regulations are entitled to deference under <u>Chevron USA, Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843–44 (1984)." <u>Xin Liu</u>, 347 F.3d at 1133 (<u>citing</u> <u>Bachelder</u>, 259 F.3d at 1123 n. 9).

1   approval and was charged with 3.39 hours of Absence Without Official Leave ("AWOL").  In

2   opposition, Plaintiff claims that he followed the notice requirements and called his supervisor's

3   telephone number as soon as practicable considering the facts and circumstances.

4           The regulations provide that when "a need for leave is not foreseeable, an employee must

5   comply with the employer's usual and customary notice and procedural requirements for requesting

6   leave, absent unusual circumstances.  For example, an employer may require employees to call a

7   designated number or a specific individual to request leave."  29 C.F.R. § 825.303(c). The regulations

8   further state that if "an employee does not comply with the employer's usual notice and procedural

9   requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be

10  delayed or denied."  Id.  In addition, when the

11          need for leave is not foreseeable, an employee must provide notice to the employer as
            soon as practicable under the facts and circumstances of the particular case.  It generally
12          should be practicable for the employee to provide notice of leave that is unforeseeable
            within the time prescribed by the employer's usual and customary notice requirements
13          applicable to such leave.

14  29 C.F.R. § 825.303(a).  Notice to the employer may be given by an adult family member if the

15  employee is unable to call in personally.  Id.

16          The Employee and Labor Relations Manual ("ELM") and the Standard Operating Procedure

17  ("SOP") of the United States Postal Service in the San Diego District provide guidelines as to the duties

18  and obligations of employees seeking FMLA leave and procedures to report an unexpected absence.

19  (O'Connor Decl. ¶¶ 4, 6; D's NOL, Exs. 19, 20, 21; Pl's NOL, Ex. 4.)  Both documents state that

20  "[e]mployees are required to be regular in attendance."  (D's NOL, Ex. 19 § 665.41; Ex. 20,  ¶ II.1.a.)  If

21  an employee seeks to report an unexpected absence, an employee must call the Interactive Voice

22  Response System ("IVR").  (Id., Ex. 20 ¶¶ II.1.c.; II.3.a.)  In addition, employees who are going to be

23  late to work must call the IVR and state the duration of their tardiness and explain the reason for their

24  lateness to their supervisor.  (Id., Ex. 20 ¶ II.3.c.) The IVR system is a centralized toll-free number for

25  employees to call to report an absence which operates every day, twenty-four hours a day.  (O'Connor

26  Decl. ¶ 3.)   ELM requires employees to "keep his or her supervisor informed of intentions to return to

27  work and of status changes that could affect his or her ability to return to work."  (D's NOL, Ex. 21 §

28  515.51.)

10

An employee who does not report for duty on scheduled days are considered absent without leave ("AWOL").  (D's NOL, Ex. 19 § 665.42; Ex. 20 ¶ II.1.b.)  In an emergency, the supervisor "must be notified of the inability to report as soon as possible.  Satisfactory evidence of the emergency must be furnished later."  (Id.)  If satisfactory evidence is not provided, the employee will be placed in a nonpay status.  (Id.)

Courts have held that an employee may be terminated for violating Defendant's notice requirements.  Buckman v. MCI World Com, Inc., 374 Fed. Appx. 719, 720 (9th Cir. 2010) (employee conceded that he called in forty-eight minutes after his shift began and failed to offer any evidence that he was unable to call in before his shift and employee had received 11 previous warning for violating this policy and had been on final warning); Brown v. Automotive Components Holding, LLC, 622 F.3d 685, 687 (7th Cir. 2010) (granting Defendant's motion for summary judgment when employee failed to give employer notice of need to extend her leave and considered AWOL after failing to give proper FMLA notice); Gilliam v. U.P.S., 233 F.3d 969, 971-72 (7th Cir. 2000).

Richard Drennen was employed as Supervisor Maintenance Operations in 2007 and was Plaintiff's first-level supervisor until July 4, 2008.  (Drennen Decl. ¶¶ 1, 2.)  In April and May 2008, Plaintiff was scheduled to work on Mondays, Tuesdays, Fridays, Saturdays and Sundays from 3:00 p.m. for eight hours.  (Id. ¶ 3.)  Plaintiff was authorized to take a thirty-minute lunch break and two fifteen-minute breaks each workday.  (Id.)  In 2008, Drennen had a cellular telephone and a land-line in his office and those numbers were written on the white board for the employees at stand-up meetings.  (Id. ¶ 6.)  Prior to April 2008, Drennen informed his employees to call the IVR system if they were going to be late or absent and then to call him if they needed to talk to him.  (Id.)  He always answered the phone or let the phones take a message; however, he never refused or disconnected a call from Plaintiff.  (Id.) Prior to April 2008, Drennen informed Plaintiff about five times that he was required to call the IVR system if he was going to be late or call Drennen in advance.  (Id. ¶ 5.)

On May 11, 2008, at 7:49 p.m., Plaintiff received an emergency phone call from his sister that his mother was having difficulty breathing and her oxygen saturation level was very low.  (D's NOL,

1   Ex. 11, P's Depo. at 164:18-20.)[5]  He looked for his supervisor in his office to inform him but he was

2   not there.  (Id. at 164:18-165:8; 165:18-166:10.)  He clocked out to lunch and left right away.  (Id.)  He

3   stated that he made no attempt to telephone Mr. Drennen before he left and while he was driving home.

4   (Id. at 165:9-16.)  Once his mother was stabilized, he left to return to work and on the way to work, he

5   was stopped by the police.  (Id. at 175:22-176:18.)  While he was stopped, Plaintiff telephoned Mr.

6   Drennen at 10:48 p.m.[6] to inform him of his absence.  (Id.)  Plaintiff did not ask his sister to call his

7   supervisor for him.  (Id. at 176:5-12.)  On May 11, 2008, Plaintiff submitted a Request for or Notifica-

8   tion of Absence, Form 3971 ("PS 3971").  (P's NOL, Ex 3 at 35.)  Mr. Drennen, his supervisor,

9   disapproved the request and wrote "[d]id not notify supv. of absence."  (Id.)

10         Plaintiff does not dispute these facts except he makes the following assertions.  First, Plaintiff

11   states he was not able to call Mr. Drennen while driving to his sister's house because he was on the

12   phone with her as he drove to her house as she was reading their mother's oxygen levels.  (D's NOL,

13   Ex. 11, P's Depo. at 165:11-16.)  Therefore, the first opportunity he had to call his supervisor was when

14   he was stopped by the police on his way to return to work at 10:48 p.m.  (Opp. at 8.)  He claims that he

15   followed instructions and called his supervisor and submitted the appropriate PS 3971 form "as soon as

16   practicable considering the particular facts and circumstances."  (Id.)  He also claims that he clocked out

17   to lunch to minimize his absence based on the verbal agreement with his previous supervisor Mike

18   Boisvert.  (Opp. at 8, 12.)

19         The facts presented demonstrate that Plaintiff failed to follow the customary and usual procedure

20   in notifying his employer of an unexpected absence.  Plaintiff left unexpectedly during work around

21   7:49 p.m. for 3.39 hours without informing his employer until three hours later.  Plaintiff stated that

22   when he first received the emergency phone call, he went to his supervisor's office to inform him but he

23   was not there.  He claims that he could not call his supervisor when he drove to his sister's house

24   because he was on the phone with her the whole time monitoring his mother's oxygen level.  However,

25   the phone records do not support his statement.  The telephone records show that his sister called him at

---

27         [5]It is not disputed that the cellular telephone records are from the cellular telephone used by
Plaintiff during this time.

28         [6] On the phone records, Mr. Drennen's number is 619-571-7824.  (Opp. at 3.)

1  7:49 p.m. for one minute and then another one minute phone call was made at 7:52 p.m.  (P's NOL, Ex.

2  2.)  He testified that it took 20 to 25 minutes to drive from his sister's house to work.  (D's NOL, Ex. 22,

3  P's Depo. at 89:21-24.)  Therefore, the records do not support Plaintiff's argument that he spent the

4  entire drive on the telephone with his sister.  Plaintiff had the opportunity to call the IVR system or his

5  supervisor on the drive to his sister's house.  He could have also asked his sister to call in for him.

6  However, he waited until he was stopped by a police officer at 10:48 p.m., three hours after he left work.

7  Accordingly, the Court concludes that Plaintiff has failed to demonstrate there is a genuine issue of

8  disputed fact that he did not violate his employer's customary and usual requirement to notify Defendant

9  "as soon as possible" and to "keep his or her supervisor informed of intentions to return to work and

10  status changes that could affect ability to return to work."  (D's NOL, Ex 19 § 665.42; Ex. 21 § 515.51.)

11         In addition, he states that he had a verbal agreement with his previous supervisor Mike Boisvert

12  that he could use his lunch break to reduce the amount of FMLA leave he took because his leave was

13  leave without pay.  (D's NOL, Ex. 11, P's Depo at 99:4-18.)  He claims that Boisvert told him that as

14  long as the break was less than 30 minutes he could clock in and out without any problems.  (FAC ¶ 51.)

15  Also, Plaintiff contends it was common place for him to leave in the middle of work and lose pay

16  whenever an FMLA call was received and that he would either let his supervisor know or leave a PS

17  3971 form in his office or fill it upon his return.  (Opp. at 6.)  He states that he talked with Mr. Drennen

18  about the arrangement with Boisvert, and although Drennen never approved it, he also never disap-

19  proved it.  (D's NOL, Ex. 22, P's Depo. at 107:4-6, 11-13.)  However, Plaintiff has not provided any

20  facts to support this oral agreement.  In fact, the documents show that on November 29, 2006, Plaintiff

21  was issued a Notice of Proposed Removal for Failure to be Regular in Attendance and AWOL from

22  Michael Boisvert, his supervisor.  (D's NOL, Ex. 14.)  Plaintiff has failed to show a genuine issue of

23  material fact that he had a verbal agreement with his previous supervisor Boisvert that he could take

24  extended lunch breaks to reduce his FMLA hours and to leave work for FMLA purposes and inform his

25  supervisor after his return.

26         In conclusion, Plaintiff has not demonstrated a genuine issue of material fact as to Defendant's

27  decision to reject Plaintiff's request for FMLA leave on May 11, 2008 for failing to follow the usual and

28  customary notice and procedural requirements to notify his employer of an unexpected absence.  See

1  Celotex Corp., 477 U.S. at 323.  Accordingly, the Court GRANTS Defendant's motion for partial

2  summary judgment as to the decision to reject Plaintiff's request for FMLA and give Plaintiff AWOL

3  status on May 11, 2008.

4      **2.    July 3, 2008 Removal From Employment**

5      Defendant argues that Plaintiff was late to work eleven times in April and May 2008 and he

6  failed to comply with the requirement to call the IVR system.  Therefore, Plaintiff was charged with

7  "Failure to Follow Instructions" and removed from employment in a decision dated July 3, 2008.

8  Plaintiff argues that he complied with the notice requirement as the telephone records[7] show that he

9  contacted his supervisor on the dates that he was going to be more than a few minutes late.

10      When an employee is going to be absent from work or late, he is required to contact management

11  and obtain permission in advance or to contact the IVR system in advance unless an emergency prevents

12  the employee from doing so.  (Drennen Decl. ¶ 5.)  Mr. Drennen states that prior to April 2008, he

13  reminded Plaintiff about five times that if he was going to be late, he needed to call the IVR system in

14  advance, or call me in advance.  (Id.)  Mr. Drennen informed Plaintiff to either call the IVR system or to

15  call him in advance.  (Id. ¶ 5.)

16      Plaintiff was late for work on April 12 and April 13, 2008 and failed to notify management or

17  call the IVR system.  (Id. ¶ 7.)  On April 13, 2008, Drennen met with Plaintiff to discuss his tardiness

18  and failure to contact the USPS and reminded him of his obligation to be in regular attendance and

19  emphasized the use of the IVR system.  (Id. ¶ 8.)  After the April 13 discussion, Plaintiff was late nine

20  more times in April and May 2008; April 18, 19, 22, 25, 26, 28, 29 and May 2 and 5, 2008.  (Id. ¶ 9.)

21  He failed to either notify management or call the IVR system of his tardiness.  (Id. ¶ 9.)

22      According to the Notice of Proposed Removal dated June 2, 2008, Plaintiff was charged with

23  Failing to Follow Instructions on twelve different occasions.  (D's NOL, Ex. 3.)  At his deposition,

24  Plaintiff testified that he did not telephone his tardiness on April 12, 13, or 18th.[8]  (D's NOL, Ex. 11, P's

25  Depo. at 120:23 - 121:1; 121:17- 122:11.)  On April 12, 2008, he was late .09 hours or 5.4 minutes.  (Id.,

26  

27      [7]The telephone records do not indicate the year the calls were made.  The parties do not dispute that the telephone records are from the year 2008.

28      [8]No telephone records were submitted for these dates.  (D's NOL, Ex. 11, P's Depo. at 121:11-14.)

Ex. 3.)  On April 13, 2008, he was late .10 hours or 6 minutes.  (Id.)  On April 18, 2008, he was late .08 hours or 4.8 minutes.  (Id.)  Plaintiff does not recall the details of these dates but explains that he probably did not call in because he was already on the premises since he was only five or six minutes late. (Id., Ex. 11, P's Depo. at 121:22-122:3.)

On April 19, 2008, Plaintiff was late .40 hours or 24 minutes.  (Id., Ex. 3.)  According to Plaintiff's cellular telephone records, on April 19, 2008, he called Mr. Drennen telephone number at 3:04 p.m.  (Id., Ex. 18.)

On April 22, 2008, Plaintiff was late .88 hours or 53.8 minutes late.  (Id., Ex. 3.)  The telephone records show that on April 22, 2008, Plaintiff called Mr. Drennen at 2:57 p.m.  (Id., Ex. 11, P's Depo. at 148:1-3.)  He does not recall if Mr. Drennen answered or not but in the end he said he must have been ignored by Mr. Drennen on that call. (Id. at 149:1-150:17.)

On April 25, 2008, Plaintiff was late .45 hours or 27 minutes.  (D's NOL, Ex. 3.)  According to the phone records, Plaintiff called Drennen at 3:03 p.m., 3:04 p.m. and again at 3:44 p.m.  (D's NOL, Ex. 18; P's Depo. at 152:6-20.)  However, Plaintiff does not recall what happened on these three phone calls.  (P's Depo. at 152:15-23.)

On April 26, 2008, Plaintiff was late .11 hours or 6.6 minutes.  (Id., Ex. 3.)  Plaintiff states that he did not think he would be late on that day so he did not call.  (Id., Ex. 11, P's Depo. at 154:7-20.)  He said he called Drennen later at 8:51 p.m. because he was late coming back from his lunch break.  (Id. at 154:21-24; 155:4.)

On April 28, 2008, Plaintiff was late .10 hours or 6 minutes.  (Id., Ex. 3.)  The telephone records show no record of any phone calls.  (Id., Ex. 18.)  Plaintiff testified that since he was only late six minutes, he did not call.  (Id., Ex. 11, P's Depo. at 155:21-25.)

On April 29, 2008, Plaintiff was late .15 hours or 9 minutes.  (Id., Ex. 3.)  The telephone records show that Plaintiff made a call to Drennen at 2:50 p.m.  (Id., Ex. 18.)  Plaintiff stated that he did not get through to Drennen on the telephone and got disconnected.  (Id., Ex. 11, P's Depo. at 157:17-25;158:1-3.)

1    On May 2, 2008, Plaintiff was late .11 hours or 6.6 minutes.  (<u>Id.</u>, Ex. 3.)   Plaintiff stated that no

2    call was made on that date because he must have been on his way or on the premises and thought he

3    would make it.  (<u>Id.</u>, Ex. 11, P's Depo. at 158:17-21; 158:23-159:5.)

4    On May 5, 2008, Plaintiff was late .23 hours or 13.8 minutes.  (<u>Id.</u>, Ex. 3.)  On that day, the

5    phone records show that Plaintiff tried to call Mr. Drennen at 2:52 p.m. but was unable to get through.

6    (<u>Id.</u>, Ex. 18; P's Depo. at 159:19-21; 161:7-10.)  He did not make any other attempts to call his work.

7    (<u>Id.</u>, Ex. 11, P's Depo. at 161:11-15.)

8    On May 11, 2008, Plaintiff left the premises during his scheduled duty period and without

9    getting management's approval and charged with 3.39 hours of absence without official leave.

10   (Drennen Decl. ¶ 10.)  Drennen investigated the circumstances of the tardiness and AWOL and on May

11   16, 2008, Drennen conducted an investigative interview of Plaintiff.  (<u>Id.</u> ¶ 11.)  Drennen concluded that

12   Plaintiff was "well aware of his requirement to maintain regular attendance, to contact management of

13   his inability to work, and to receive approval from his supervisor prior to leaving the building, and the

14   consequences of failing to do so."  (<u>Id.</u>)  Drennen also learned that Plaintiff's previous supervisors had

15   issued a Notice of Proposed Suspension in 2006 for failing to regularly attend to his job; however, the

16   removal was reduced to a 14-day suspension.  (<u>Id.</u> ¶ 12; D's NOL, Ex. 15.)   The Grievance Decision

17   was to remain in Plaintiff's file until June 28, 2008.  (Drennen Decl. ¶ 12.)

18   Based on the investigation, on June 2, 2008, Drennen issued a Notice of Proposed Removal for

19   tardiness and AWOL in April and May 2008.  (Drennen Decl. ¶ 13; D's NOL, Ex. 3.)  The Notice of

20   Proposed Removal charged Plaintiff with Failure to Follow Instructions.  (D's NOL, Ex. 3.)  Drennen

21   states that his decision to remove Plaintiff had nothing to do with Plaintiff taking or seeking FMLA

22   leave and the removal was based on the reasons stated in the Notice of Proposed Removal.  (Drennen

23   Decl. ¶ 14; D's NOL, Ex. 3.)  On July 3, 2008, a Letter of Decision was issued which upheld the Notice

24   of Proposed Removal dated June 2, 2008. (D's NOL, Ex. 4.)  The decision was upheld for failing to

25   provide a reasonable explanation for his continued failure to follow the instructions of his supervisor;

26   failure to provide a reasonable explanation as to why he was unable to contact IVRs to report his

27   absences; and failure to provide a reasonable explanation for his failure to follow the instructions of his

28   supervisor to report to them that he was leaving prior to his assigned end tour.  (<u>Id.</u> at 2.)

1    In opposition, Plaintiff does not dispute the facts of the case but argues that he followed

2    Defendant's procedure for being late or absent by telephoning Drennen; however, he claims that

3    Drennen ignored his phone calls.  Plaintiff testified that Drennen picked up the first two calls Plaintiff

4    made and ignored the rest.  (D's NOL, Ex. 11, P's Depo. at 149:21-25; 176:21-25.)  Moreover, on the

5    days that he was only a few minutes late, he states that he was probably on the work premises and did

6    not think he would be late.  In addition, Plaintiff explained that he would only call the IVR system when

7    he would not be able to come to work.  (Id. at 71:15-20; Opp at 11.)  He believed that it was not

8    necessary to call the IVR system if he was going to be five minutes late because the IVR system was

9    time consuming and would make him more late and pushing numbrs into his telephone while driving

10   would be dangerous.  (Opp. at 11; D's NOL, Ex. 11, P's Depo at 70:16-71:11.)  If he was going to be

11   late, he would call the supervisor.  (D's NOL, Ex. 11, P's Depo. at 72:8-15.)

12   Although Defendant generally argues that Plaintiff has not produced any admissible evidence, it

13   has not specifically objected to the documents filed in opposition to Defendant's motion for summary

14   judgment.  In addition, although the documents submitted by Defendant are not admissible at this stage,

15   the documents could be made admissible at trial.  See Fraser, 342 F.3d at 1036.  Therefore, the Court

16   considers the documents filed in support of Defendant's opposition.[9]

17   The documents filed by Plaintiff and Defendant raise suspicion as to whether Defendant

18   terminated Plaintiff in violation of the FMLA.  According to Drennen, he informed Plaintiff to either

19   call the IVR system or to call him in advance if he was going to be late.  (Drennen Decl. ¶ 5).  Instead of

20   calling the IVR system to inform his supervisor he would be late, Plaintiff called his supervisor.  (D's

21   NOL, Ex. 18.)  The Proposed Notice of Removal and telephone records reveal that for all the times

22   Plaintiff was between five to six minutes late, no telephone call was made to Drennen.  (D's NOL, Exs.

23   3, 18.)  Plaintiff testified that he did not call because he was probably on the premises and thought he

24   would make it on time.  (D's NOL, Ex. 11, P's Depo. at 121:22-122:3; 154:7-20; 155:21-25; 158:17-

25   21.)  He also stated that it took him five minutes to walk to his car from his job.  (Id. at 102:16-18.)  For

26   tardiness greater than six minutes, the phone records show that Plaintiff called Drennen's telephone

27

28        [9]The Court notes that Defendant's documents themselves raise a genuine issue of material fact as
     to whether Defendant terminated Plaintiff in violation of the FMLA.

number.  (D's NOL, Exs. 3, 18.)  Drennen states that he always either answered the phone or let the

phones take messages.  (Drennen Decl. ¶ 6.)  Plaintiff opposes stating that besides three times, he was

never able to talk to Drennen on the phone because his calls were ignored.  (FAC ¶ 40; Opp. at 11.)

Whether Plaintiff got through on the telephone to Drennen, the telephone records show that Plaintiff

attempted to contact his supervisor when he was more than just a few minutes late.  There is a genuine

issue of material fact as to whether Plaintiff attempted to comply with usual and customary procedure by

calling his supervisor if he was going to be late.

Plaintiff argues his PS 3971 forms were submitted and approved on a daily basis.  (Opp. at 4-5;

12.)  However, he claims that his supervisor asked Plaintiff to sign PS 3971s for April 12, 13, 18, 19,

and 25; however, as indicated on the documents, he refused to sign the documents.  (Id.; Ex. 9 at pgs.

55-61.)  He claims that his supervisor was trying to replace these "disapproved" forms with the

approved forms to support his termination although he has not submitted any of these approved

documents except one.  (Opp. at 5.)  On these PS 3971s, the date of disapproval by his supervisor was

May 30, 2008, three days prior to the Notice of Proposed Removal.  In addition, the PS 3971 forms are

forms submitted by the employee to the employer for approval.  It is not clear why Drennen asked

Plaintiff to sign his PS 3971 requests.  Moreover, the PS 3971 form dated May 5, 2008 for tardiness for

.23 minutes from 3:00 p.m. to 3:14 p.m. was approved.  (Id., Ex. 10 at 61.)  However, this tardiness was

listed as an unscheduled late on the Notice of Proposed Removal dated June 2, 2008.  (D;'s NOL, Ex.

3.)

Therefore, in liberally construing the documents submitted by Plaintiff, the Court concludes that

Plaintiff  has created a genuine issue of material fact as to whether his continued taking of FMLA-

protected leave constituted a negative factor in its decision to terminate him on July 3, 2008.  See

Bachelder, 259 F.3d at 1125.  Accordingly, the Court DENIES Defendant's motion for summary

judgment as to whether its decision to terminate Plaintiff's employment was a violation of the FMLA.

## Conclusion

Based on the above, the Court **GRANTS in part and DENIES in part** Defendant's motion for

partial summary judgment as to the FMLA claim regarding any incidents that occurred after May 5,

2006.  Specifically, the Court **GRANTS** Defendant's motion for partial summary judgment as to any

alleged events prior to May 5, 2007 as untimely.  The Court **GRANTS** Defendant's motion for partial summary judgment as to the decision to label Plaintiff AWOL, rather than give FMLA for his absence on May 11, 2008.  The Court **DENIES** Defendant's motion for partial summary judgment as to whether the decision to terminate Plaintiff's employment on July 3, 2008 was a violation of the FMLA.

IT IS SO ORDERED.


DATED:  January 31, 2012

Hon. Anthony J. Battaglia
U.S. District Judge