UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILFREDO A. GOLEZ,<br><br>                Plaintiff,<br>v.<br><br>JOHN E. POTTER, Postmaster General,<br><br>                Defendant. | Case No.: 09cv0965 AJB (WMC)<br><br>**MEMORANDUM DECISION FOLLOWING TRIAL AND ORDER FOR ENTRY OF JUDGMENT** |

On July 23, 24 and 25, 2012, the Court held a bench trial in the above-captioned matter. Plaintiff Wilfredo A. Golez, proceeded *pro se,* and Timothy Stutler, Esq. and Rosa Catania, Esq. represented the Defendant John E. Potter, Postmaster General. Having carefully reviewed the evidence and the arguments of the parties, as presented at trial and in their written submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### **Procedural History**

On May 5, 2009, Plaintiff filed a complaint against Defendant Potter. (Dkt. No. 1.) On September 14, 2009, Plaintiff filed a first amended complaint. (Dkt. No. 15.) On December 8, 2009, Defendant filed a motion to dismiss the first amended complaint. (Dkt. No. 22.) Before the motion to

dismiss was fully briefed, on February 22, 2010, Plaintiff filed a motion for leave to file a second amended complaint. (Dkt. No. 30.) On February 24, 2010, the Court granted Plaintiff's motion for leave to file a second amended complaint and denied Defendant's motion to dismiss as moot. (Dkt. No. 34.) On February 24, 2010, a second amended complaint was filed. (Dkt. No. 35.) On March 5, 2010, Plaintiff filed a motion for leave of court to file an addendum to the second amended complaint. (Dkt. No. 37.) On March 12, 2010, the Court construed that motion as a motion for leave to file a third amended complaint which was granted. (Dkt. No. 38.) A third amended complaint was filed on March 29, 2010. (Dkt. No. 39.) On April 9, 2010, Defendant filed a motion to dismiss. (Dkt. No. 42.) On April 21, 2010, Plaintiff filed a motion for leave of court to file a fourth amended complaint. (Dkt. No. 44.) On April 23, 2010, the Court denied Plaintiff's request for leave to file a fourth amended complaint and set a briefing schedule on the motion to dismiss. (Dkt. No. 45.) On July 12, 2010, the Court granted Defendant's motion to dismiss and motion to strike and granted in part and denied in part Plaintiff's motion for leave to file a fourth amended complaint. (Dkt. No. 56.) On August 6, 2010, Plaintiff filed a fourth amended complaint. (Dkt. No. 57.) An answer was filed on August 18, 2010. (Dkt. No. 59.) On August 20, 2010, Plaintiff filed a motion for temporary restraining order which was denied on August 23, 2010. (Dkt. No. 62.)

On February 10, 2011, Defendant filed a motion for partial summary judgment, or alternatively, motion to dismiss. (Dkt. No. 81.) On February 22, 2011, Plaintiff filed a motion for leave of court to amend the fourth amended complaint which was denied on February 28, 2011. (Dkt. Nos. 86, 87.) On March 14, 2011, the case was transferred to the undersigned judge. (Dkt. No. 89.) On October 17, 2011, the Court granted Defendant's motion for partial summary judgment as to the Title VII and rehabilitation claims and as to the Family Medical Leave Act ("FMLA") claims regarding any events prior to May 5, 2006. (Dkt. No. 113.)

On July 25, 2011, Defendant filed a second motion for partial summary judgment as to the remaining FMLA claims regarding any events after May 5, 2006. (Dkt. No. 106.) On February 3, 2012, the Court granted in part and denied in part Defendant's motion for partial summary judgment as to the remaining FMLA claim. (Dkt. No. 133.) The Court denied Defendant's motion for partial summary

judgment as to whether Defendant's decision to terminate Plaintiff's employment on July 3, 2008 was a violation of the FMLA.

## **Cause of Action**

The Court has jurisdiction of this case against the United States pursuant to the FMLA, 29 U.S.C. § 2615(a)(1). Venue is proper under 28 U.S.C. § 1391(e). The FMLA grants up to twelve weeks of leave per year to eligible employees in various circumstances, including in order to care for a parent with a serious health condition. 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.113; 29 C.F.R. § 825.201(a). Plaintiff asserts that he suffered an adverse employment action for taking FMLA leave. While he refers to his claim as one of retaliation, this type of claim is known as an "interference claim" under 29 U.S.C. § 2615(a)(1). Relying on an employee's FMLA leave as a negative factor in disciplining him constitutes interference with the employee's rights under the FMLA. Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1122-23 (9th Cir. 2001).

In order to prevail on his FMLA claim, Plaintiff is required to prove each of the following elements by a preponderance of the evidence:

(1) Plaintiff was eligible for FMLA leave;

(2) Defendant was covered by the FMLA;

(3) Plaintiff was entitled to FMLA leave;

(4) Plaintiff gave sufficient notice of intent to take leave; and

(5) Defendant used Plaintiff's taking of FMLA leave as a negative factor in removing him.

Sanders v. Newport, 657 F.3d 772, 778 (9th Cir. 2011); see also Xin Liu v. Amway Corp., 347 F.3d 1125, 1132-23 (9th Cir. 2003); Bachelder, 259 F.3d at 1122-23. When the approximate timing of the need for FMLA leave is not foreseeable, an employee must give notice of the need for such leave as soon as practicable. 29 C.F.R. § 825.303(a). An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, and may deny FMLA leave and discipline an employee who violates those requirements and fails to give timely notice of the need for FMLA leave. Buckman v. MCI World Com Inc., 374 Fed. Appx. 719 (9th Cir. 2010) (unpublished); Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706, 710 (7th Cir. 2002);

Gilliam v. United Parcel Service, Inc., 233 F. 3d 969, 971-72 (7th Cir. 2000); Bones v. Honeywell Int'l, Inc., 223 F. Supp. 2d 1203, 1217-18 (D. Kansas 2002); 29 C.F.R. § 825.302(d).

An employer may also require an employee desiring FMLA leave in order to care for a parent to support the need for such leave with a certification from the parent's health care provider. 29 U.S.C. § 2613(a)(1); 29 C.F.R. § 825.305(a). The certification must notify the employer, among other things, of the probable duration of the condition; an estimate of the amount of time that the employee is needed to care for the parent; if leave is required to care for a family member, an estimate of the time period; and if the family member will need care only intermittently, the probable duration of the need. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306(a). An employer may request FMLA recertification from an employee as often as every 30 days in connection with an absence by the employee, and more frequently if circumstances described by the previous certification have changed significantly. 29 U.S.C. § 2613(e); 29 C.F.R. §§ 825.308(a) & (c)(2). The employee must provide the recertification within the time frame requested by the employer (at least 15 calendar days after the employer's request), unless not practicable despite the employee's diligent, good faith efforts. 29 C.F.R. § 825.308(d).

## Findings of Fact

Plaintiff was employed as a custodian with the United States Postal Service ("USPS") from 1998 until July 4, 2008, when his employment was terminated. Defendant's Employee and Labor Relations Manual ("ELM") and the Standard Operating Procedure ("SOP") of the United States Postal Service ("USPS") San Diego District provide guidelines as to the duties and obligations of employees seeking FMLA leave and procedures to report an unexpected absence. (Trial ("Tr.") Exs. A & 57.) Both documents state that "[e]mployees are required to be regular in attendance."

When an employee is going to be absent from work or late, the employee is required to contact management and obtain permission or to contact the Interactive Voice Response System ("IVR") system in advance unless an emergency prevents the employee from doing so. The IVR system is a centralized toll-free number for employees to call to report an absence which operates every day, twenty-four hours a day. If an employee seeks to report an unexpected absence or tardiness, an employee must also call the IVR. Employees who are going to be late to work must call the IVR and state the duration of their tardiness and explain the reason for their lateness to their supervisor. ELM requires employees to "keep

his or her supervisor informed of intentions to return to work and of status changes that could affect his or her ability to return to work." (Tr. Ex. 57.) All post office employees are required to notify a supervisor prior to leaving the premises before their tour ends.

On December 28, 2006, Defendant suspended Plaintiff for fourteen days, which was to remain on his record for eighteen months, until June 2008. The events in issue in 2006 included nine times Plaintiff was found to be absent without leave ("AWOL"). (Tr. Ex. 47.) Some of the absences were due to having to go home to care for his mother. Plaintiff was advised by his supervisor in 2006 that AWOL is always considered serious and will not be tolerated. Plaintiff testified he knew about the Postal Service's rules about attendance. He knew he must provide notice if he is unable to come to work or is late. He knew he had to obtain approval from a supervisor before leaving the premises. However, Plaintiff claims that a previous supervisor allowed him to deviate from the rules. Plaintiff never provided corroborating testimony. In fact, the evidence was otherwise contrary. It was the previous supervisor who disciplined Plaintiff in 2006, and who had stressed the importance of the attendance rules.

In Spring 2008, Plaintiff was scheduled to work on Mondays, Tuesdays, Fridays, Saturdays and Sundays from 3:00 p.m. until 11:30 p.m. Plaintiff was authorized to take a thirty-minute lunch break and two fifteen minute breaks each workday. Defendant approved unscheduled FMLA leave for Plaintiff from December 1-22, 2007, subject to Defendant's receipt of sufficient notice of such leave. (Tr. Ex. I.) In Spring 2008, Plaintiff and his sister Elena Golez, also a USPS employee, notified Defendant's FMLA Coordinator that their mother's condition had changed such that they would need FMLA leave at unforeseeable times in the future. Because Plaintiff's December 2007 certification did support the leave Plaintiff contemplated as of Spring 2008, Defendant directed Plaintiff and Elena Golez to provide an updated medical certification within fifteen days supporting the unforeseeable leave they sought. Plaintiff did not submit the updated certification until June 6, 2008. Based on the certification, Plaintiff was authorized to take unscheduled FMLA leave five to twelve times a month to care for his mother commencing retroactively on May 5, 2008 until June 5, 2009, **subject to providing sufficient notice of such leave.** Plaintiff was not protected from unscheduled leave from December 22, 2007 to May 4, 2008 because he did not provide a medical certification.

In Spring 2008, Mr. Richard Drennen, Supervisor of Maintenance Operations since sometime in 2007 and Plaintiff's direct supervisor, had a cellular telephone and a land-line in his office. Those numbers were written on the white board for the employees at daily stand-up meetings. Prior to April 2008, Mr. Drennen informed his employees to call the IVR system if they were going to be late or absent and then to call him if they needed to talk to him. He always answered the phone or let the phones take a message; however, he never refused or disconnected a call from Plaintiff. He testified that he never received a telephone call or voice mail from Plaintiff during April and May 2008, except for late on the evening of May 11, 2008.

Prior to April 2008, Mr. Drennen informed Plaintiff about five times that he was required to call the IVR system if he was going to be late. Plaintiff was late for work eleven times in April and May 2008 which included April 12, 13, 18, 19, 22, 25, 26, 28, 29 and May 2 and 5, 2008. Plaintiff failed to either notify management or call the IVR system in advance of these instances of tardiness to give notice that he would be late. Although Plaintiff's telephone records show that he made attempts to contact Drennen's cellular telephone number on several occasions, Plaintiff acknowledged that in order to provide notice, he must actually get in touch with a supervisor. Besides the unsuccessful telephone calls, Plaintiff made no further efforts to contact his supervisor about his tardiness.

In addition, on several instances of tardiness, Plaintiff stated he did not call the IVR or his supervisor because he was already on the premises and thought he would be timely since he believed there was a five minute grace period. However, Mr. Drennen and Ms. Barbara Rodriguez, the Labor Relations Specialist at the Postal Service, testified that there was no general five minute grace period. Ms. Rodriguez explained that there was a five minute grace period only when there was "congestion at the clock", and that information was noted on the employees' record when that occurred. There was not a five minute grace period to excuse tardiness.

Among the twelve instances of failure to follow instructions in the Notice of Proposed Removal of June 2, 2008, Plaintiff testified that only four absences on April 19, 25, 26 and May 11th were FMLA related. Because Plaintiff did not provide a medical recertification until June 6, 2008, his FMLA related lateness in April 2008 were not protected under the FMLA. In addition, on these dates in April, Plaintiff

did not provide sufficient notice as he attempted to call Drennen's cellular telephone number after his shift had started.

On May 11, 2008, at 7:49 p.m., when Plaintiff was at work, he received an emergency phone call from his sister that his mother was having difficulty breathing and her oxygen saturation level was very low. Plaintiff looked for Drennen in his office but he was not there. He immediately clocked out from work and remained out for 3.39 hours. Plaintiff had different options available to him to provide notification that he was leaving the work premises. According to the testimonies at trial, Plaintiff could have told another supervisor on the floor that he was leaving; he could have filled out a Request for or Notification of Absence, Form 3971 ("PS 3971") and left it on Drennen's desk; or he could have told another employee that he was leaving. Plaintiff conceded that he did not notify anyone at his workplace that he was leaving the premises because he panicked.

In a situation where there is an emergency that prevents an employee from obtaining permission, an employee is to contact the supervisor as soon as practicable. Plaintiff had the opportunity to call the IVR system or Mr. Drennen on the drive to his sister's house. During that drive he was using his telephone to call his sister's house so he could monitor his mother's condition. He could have also asked his sister to call in for him as he was driving or while attending to his mother; or he could have called the IVR or Mr. Drennen prior to leaving his sister's house to return to work. However, he waited until he was stopped by a police officer at 10:48 p.m. before attempting to telephone Mr. Drennen. Plaintiff returned to work on May 11, 2008 around 11:30 p.m. While the situation with Plaintiff's mother was exigent, it was really not an emergency. Neither Plaintiff nor his sister testified that they considered calling 911 that evening.

Lastly, pursuant to the ELM, an employee must provide satisfactory evidence of the emergency. (Tr. Ex. 57.) Plaintiff did not provide any evidence of the emergency on May 11, 2008, including a copy of the ticket he received that night. When he returned to work, Plaintiff only submitted a PS 3971. Mr. Drennen disapproved the request and wrote "[d]id not notify supv. of absence." (Tr. Ex. AN.)

At trial, Plaintiff did not fully address the tardiness on May 5, 2008, which was covered by the FMLA retroactively by his medical certification submitted on June 6, 2008. Defendant addressed the Form 3971 that approved FMLA leave from 3:00 - 3:14 p.m. on May 5, 2008. (Tr. Ex. AL.) Drennen

testified that the Form 3971 changed in the spring of 2008 from the old form dated April 2001. Therefore, when he checked the box "Approved, FMLA" on May 5, 2008 on the new form, he intended to check "Approved FMLA, Pending" as the two categories were switched on the new form. In addition, Plaintiff testified in his pretrial deposition that his tardiness on May 5, 2008 was not attributable to the care of his mother as he was coming to work from his home. At trial, he tried to recant that unsuccessfully.

On June 2, 2008, Plaintiff received a Notice of Proposed Removal "For Failure to Follow Instructions" to notify his workplace of his twelve instances of lateness or absence. (Tr. Ex. P.) On July 3, 2008, USPS manager Richard Sweet gave Plaintiff a Notice of Decision removing him from employment. (Tr. Ex. T.) In June 2008, Plaintiff was offered a last chance employment agreement to correct his behavior and follow the rules provided that Plaintiff withdraw all claims filed; however, he refused to sign the agreement. (Tr. Ex. 54.) On July 4, 2008, Plaintiff's employment was terminated for the reasons set forth in Mr. Drennen's June 2, 2008 Notice of Proposed Removal.

Plaintiff was terminated for: (1) failure to follow the instructions of his supervisor; (2) failure to contact IVR in advance to report the eleven instances of tardiness on April 12, 2008; April 13, 2008; April 18, 2008; April 19, 2008; April 22, 2008; April 25, 2008; April 26, 2008; April 28, 2008; April 29, 2008; May 2, 2008; or May 5, 2008; and (3) failure to follow the instructions of his Supervisor to report in advance on May 11, 2008 that he was leaving prior to the end of his assigned tour. (Tr. Ex. T.)

## Conclusions

Defendant concedes that Plaintiff was eligible for FMLA leave and that Defendant was covered by the FMLA. The Court concludes that Plaintiff has not proven by a preponderance of the evidence that Plaintiff was entitled to FMLA leave on the dates in issue and that Plaintiff gave sufficient notice of intent to take leave. His tardiness in April 2008 based on FMLA issues were not protected as he failed not only to provide a medical certification but also failed to provide sufficient notice to his supervisor. As to May 11, 2008, although he was protected under the FMLA based on the medical certification he provided, he failed to provide notice to his supervisor before leaving the premises and failed to notify his supervisor as soon as practicable based on the circumstances.

1        Plaintiff essentially conceded in his final argument that he made a choice to ignore the rules out
2   of his concern for his mother.  But he made that choice knowing he was violating the rules, and had
3   been warned formally in 2006 and thereafter informally by Mr. Drennan, that he had to follow the rules.
4   That Plaintiff knew he was putting his job at risk was clear.  While the health of a parent is serious, and
5   the whole series of events resulted in an unfortunate result to Plaintiff's job status, the Court cannot
6   excuse Plaintiff's conduct by weighing the importance of his mother's health versus his obligation to his
7   employer, and conclude that the ends justify the means.  Instead, the Court must look at the totality of
8   the evidence to decide if Defendant interfered with Plaintiff's FMLA rights.  In this case, the answer is
9   no.  To have been protected by FMLA in this case, Plaintiff needed to follow the requirements as
10  promulgated by his employer, and he simply did not.

11       Based on the facts and evidence presented at trial, Plaintiff did not prove by a preponderance of
12  the evidence that Defendant used Plaintiff's taking of FMLA leave as a negative factor in removing him.
13  Consequently, the Court concludes that Defendant's decision to terminate Plaintiff's employment on
14  July 3, 2008 was not a violation of the FMLA.

15       Accordingly, the Court enters judgment for Defendant and against Plaintiff.  The Clerk of Court
16  is instructed to enter judgment accordingly.

17       IT IS SO ORDERED.

19  DATED: July 31, 2012

                                              _____
                                              Hon. Anthony J. Battaglia
                                              U.S. District Judge